Exhibit A

| | |
|---|---|
| **DISTRICT COURT, DOUGLAS COUNTY**<br>4000 Justice Way<br>Castle Rock, CO 80109<br>(720) 437-6200 | DATE FILED: July 29, 2021 10:29 AM |
| **ALFRED RUBALCAVA III,**<br><br>            Plaintiff,<br><br>vs.<br><br>**CAPITAL VISION SERVICES, LLC (d/b/a "MyEyeDr."),**<br>**DARREN LEROSE, an individual, and**<br>**SEAN WHITE, an individual,**<br><br>            Defendants. | |
| **ATTORNEYS FOR PLAINTIFF**<br>Lilly G. Lentz, Esq. (#54221)<br>Michael J. Lazar III, Esq. (#40046)<br>FELDMANN NAGEL CANTAFIO & SONG PLLC<br>1875 Lawrence St., Suite 730<br>Denver, Colorado 80202<br>Phone: (303) 813-1200 ext 1009<br>Fax: (303) 813-1201<br>Email: llentz@fncslaw.com mlazar@fncslaw.com | Case No.: 2021CV030516<br><br>Division: 6 |
| **CORRECTED COMPLAINT AND JURY DEMAND – CLERICAL ERROR** | |

COMES NOW, Plaintiff, Mr. Alfred Rubalcava III ("Mr. Rubalcava") by and through

undersigned counsel, and for his cause of action against Defendants, Capital Vision Services, LLC,

Darren LeRose, and Sean White (collectively referred to herein as the "Defendants") and alleges

as follows:

## NATURE OF THE ACTION

1.     This is an action under C.R.S. § 24-34-402 *et seq.*, the Colorado Anti-Discrimination Act ("CADA"), and 29 U.S.C. § 623 *et seq.*, the Age Discrimination in Employment Act ("ADEA") to correct unlawful discriminatory acts of Defendants based on Mr. Rubalcava's age with regards to employment termination. As alleged with greater particularity below, Plaintiff, Mr. Rubalcava, asserts claims against Defendants alleging that Defendants wrongfully terminated Mr. Rubalcava based on his age.

## JURISDICTION & VENUE

2.     This Court has jurisdiction over the parties to this action pursuant to Colo. Rev. Stat. § 13-1-124 & Colo. Const. Art. VI, § 9.

3.     On April 23, 2021, Mr. Rubalcava received a Notice of Right to Sue from the Colorado Civil Rights Division. On June 2, 2021, Mr. Rubalcava received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission. As such, Mr. Rubalcava has properly exhausted his administrative remedies.

4.     Pursuant to C.R.C.P. 98(c)(1), venue is proper in the District Court of Douglas County for reason Mr. Rubalcava's former place of employment is located in Douglas County.

## PARTIES

5.     Mr. Rubalcava is a sixty-seven (67) year old resident of Colorado and former employee of Defendant Capital Vision Services, LLC.

6.     Defendant Capital Vision Services, LLC (formerly Capital Vision Services, LP) is a Delaware limited liability company conducting business in the State of Colorado. Capital Vision Services, LLC manages optometry practices which operate under the trade name "MyEyeDr."

Capital Vision Services LLC manages various optometry business locations throughout the State of Colorado, including MyEyeDr., Optometry of Colorado, PC, a Colorado Corporation duly registered and authorized to conduct business in the State of Colorado, located at 200 W. County Line Rd. #150, Highlands Ranch, Colorado, 80126 (hereinafter referred to as "MyEyeDr."). MyEyeDr. has had more than twenty (20) employees within the past two (2) year period.

7.     Defendant Mr. Darren LeRose ("Mr. LeRose"), is District Manager of MyEyeDr.

8.     Defendant Mr. Sean White ("Mr. White"), is General Manager of MyEyeDr.

9.     This lawsuit seeks relief as a result of the conduct of employees of Defendant MyEyeDr., under circumstances where MyEyeDr. is liable under the doctrine of respondeat superior.

## FACTUAL BACKGROUND

10.     Mr. Rubalcava was a Sales and Dispensing Optician with Vision Care Professional Services, LLC from 1993-November 2019 at the Highlands Ranch location.

11.     In November 2019, Vision Care Professional Services, LLC, was acquired by MyEyeDr. It was communicated to Mr. Rubalcava and to his coworkers at the time of acquisition that the acquisition would not affect their employment.

12.     After the acquisition, various new employees were hired. Each of these employees were fairly young—all of them younger than Mr. Rubalcava—and Mr. Rubalcava trained these new employees in various areas due to his extensive experience in the industry.

13.     On March 27, 2020, Mr. Rubalcava and some of his co-workers were placed on furlough in response to the corona virus pandemic. Mr. Rubalcava was promised that the furlough would be lifted and that he would return to work on June 28, 2020.

14.     Sometime thereafter, Mr. Rubalcava's manager, Mr. Sean White ("Mr. White"), had put in his resignation. Mr. White is under the age of forty (40) years old. Upon information and belief, when Mr. White put in his resignation, MyEyeDr. offered him more money as incentive to induce him to stay with MyEyeDr.

15.     Mr. White often made remarks about Mr. Rubalcava retiring, having asked him on several occasions when Mr. Rubalcava planned on retiring.

16.     On June 23, 2020, Mr. Rubalcava received a phone call from a Mr. Chad Cohoon and a subsequent email wherein MyEyeDr. indicated that Mr. Rubalcava's employment with MyEyeDr. would be coming to an end.

17.     Attached to the June 23 email was, *inter alia*, a termination letter from a Ms. Dellecave.

18.     In the June 23 email, MyEyeDr. indicated that Mr. Rubalcava's termination was "due to evolving and unforeseen circumstances surrounding COVID-19 and the need to adjust [their] business accordingly."

19.     A "Restructuring FAQS" document was attached to the June 23 email.  Therein, MyEyeDr. stated that the reason for the restructuring was a result of MrEyeDr. "updating business expectations" and determining "the level of office support necessary to provide proper patient care in this 'new normal'."

20.     The only other employee that was affected by the "restructuring" was a Mr. John Baker, who was fifty-seven (57) years old. Every other employee had continued employment and returned to work on June 28, 2020.

21.     At the time Mr. Rubalcava was terminated as an Eyewear Consultant at MyEyeDr., there were four (4) other Eyewear Consultants employed with MyEyeDr. Each of these Eyewear Consultants were younger than Mr. Rubalcava, and none of these younger Eyewear Consultants were terminated as a result of the alleged "reorganization."

22.     The only employee that was retained after the "restructuring" who was over the age of fifty (50) years old was an Eyewear Consultant named Ms. Pamela Loudermilk. Ms. Loudermilk had been making significantly less money than Mr. Rubalcava, and she is over ten (10) years younger than Mr. Rubalcava.

23.     Mr. Rubalcava had been with Vision Care Professional Services, LLC for twenty-nine (29) years.

24.     Mr. Rubalcava is highly qualified and has demonstrated continued commitment and value to MyEyeDr. He received various certificates, years of positive feedback, and an abundance of awards granted to him. At no point in time during Mr. Rubalcava's employment with MyEyeDr. was he told he was performing poorly.

25.     In fact, Mr. Rubalcava received letters from doctors he had worked with at MyEyeDr. after he had been terminated. In those letters, the doctors expressed their gratitude for Mr. Rubalcava's work and their discontent involving MyEyeDr.'s termination of Mr. Rubalcava.

26.     On July 27, 2020, Mr. Rubalcava began a new job. His new job pays at a rate of twenty-five dollars ($25.00) per hour and is part-time at thirty-two (32) hours per week. His new job does not offer a 401K, nor does it offer medical benefits.

27.     At MyEyeDr., Mr. Rubalcava made thirty-two dollars and fifty cents ($32.50) per hour, plus commission, working at least forty (40) hours per week. At MyEyeDr., he had a 401K that was matched and he received medical benefits.

28.     On August 3, 2020, MyEyeDr. posted a job listing for an Eyewear Consultant/Sales Associate position at its Highlands Ranch, Colorado location. This position is the exact position listed on Mr. Rubalcava's termination letter as the position he had been terminated from.

29.     Directly on its website, MyEyeDr. has had, since Mr. Rubalcava's termination, over three hundred and fifty (350) job listings across the U.S.—one hundred and fifty (150) of which are job listings for Eyewear Consultants and/or Sales Associates positions. On August 10, 2020, seven (7) job listings were in Colorado, and two (2) of these positions were Sales Associates in the Denver, Colorado area.

30.     On September 15, 2020, MyEyeDr. hired a twenty-eight (28) year old Eyewear consultant.

31.     On September 16, 2020, Mr. Rubalcava submitted a Charge of Discrimination with the Colorado Civil Rights Division and Equal Employment Opportunity Commission alleging the facts set forth above against MyEyeDr.

32.     On December 2, 2020, MyEyeDr. submitted a Response to Request for Information and a Position Statement wherein MyEyeDr.—for the first time—claimed Mr. Rubalcava was not satisfactorily performing his job duties prior to his termination.

33.     Specifically, Mr. White claimed that he had given Mr. Rubalcava various "verbal warnings for unacceptable job performance." This is untrue. Mr. Rubalcava was never reprimanded or counseled regarding concerns with his performance at work.

34.     Mr. LaRose falsely asserted that he had on a single occasion observed poor performance on the part of Mr. Rubalcava. Mr. LaRose conceded that the decision to fire Mr. Rubalcava was made by him based on this alleged observation.

## FIRST CLAIM FOR RELIEF
### (29 U.S.C. § 623 *et seq.*, Age Discrimination in Employment Act)

35.     Mr. Rubalcava restates and incorporates by reference the averments contained in Paragraphs 1-34 as though set forth herein verbatim.

36.     Mr. Rubalcava is over the age of forty (40) years old and thus a member of a protected class.

37.     Mr. Rubalcava was performing satisfactorily and was discharged despite the adequacy of his work.

38.     Upon information and belief, Mr. Rubalcava's job was not eliminated or incorporated into other positions.

39.     If Mr. Rubalcava's position had been eliminated due to an alleged reduction in force, Defendants could have retained Mr. Rubalcava but instead chose to retain several younger employees in the same position.

40.     Age was the factor that made a difference in the Defendants' decision to terminate Mr. Rubalcava. Defendants would not have terminated Mr. Rubalcava but for his age.

41.     A "restructuring" is not the true reason Defendants terminated Mr. Rubalcava's employment as such was merely a pretext to cover up for age discrimination. Defendants first claimed "restructuring" was the reason for Mr. Rubalcava's termination, then later contradicted this reason by stating Mr. Rubalcava was terminated as a result of his poor performance.

42.     Defendants' statements that Mr. Rubalcava poorly performed at work are false.

43.    The criteria used to evaluate Mr. Rubalcava's performance was entirely subjective.

44.    Defendant Mr. White often made remarks about Mr. Rubalcava retiring, having asked him on several occasions when he planned on retiring.

45.    Defendants knew or showed reckless disregard for whether its conduct was prohibited by the ADEA.

46.    As a consequence of Defendants' violation of the ADEA, Mr. Rubalcava has sustained damages, including but not limited to future earnings/lost wages, loss of a 401k, and loss of benefits.

## SECOND CLAIM FOR RELIEF
### (Pursuant to C.R.S. § 24-34-402 *et seq.*, the Colorado Anti-Discrimination Act ("CADA"))

47.    Mr. Rubalcava restates and reincorporates the averments contained in Paragraphs 1-46 as though fully set forth herein verbatim.

48.    Mr. Rubalcava is over the age of forty (40) years old and thus a member of a protected class.

49.    Mr. Rubalcava found a new job performing substantially the same duties as he did when employed by Defendants within a short period of time after being terminated, and thus was qualified for employment.

50.    Defendants discharged Mr. Rubalcava because of his age and retained younger employees in lieu of him.

51.    Defendants have no legitimate business reason for terminating Mr. Rubalcava.

52.    Reorganization of MyEyeDr. and Mr. Rubalcava's allegedly poor performance are merely pretexts for discrimination and are not credible.

53.     Defendants engaged in a discriminatory or unfair employment practice with malice or reckless indifference to the rights of Mr. Rubalcava.

54.     As a consequence of Defendants' conduct, Mr. Rubalcava has sustained damages as set forth above.

## PRAYER FOR RELIEFF

WHEREFORE, Mr. Rubalcava respectfully requests that the Court grant him the following relief:

A.  Entry of judgment against Defendants and in favor of Mr. Rubalcava as to all of Mr. Rubalcava's claims for relief;

B.  An award to Mr. Rubalcava of actual damages for all harms, losses and damages caused by Defendants' actions as asserted in this Complaint, as well as special damages, general damages, restitution, economic damages, consequential damages, and all other damages recognized by Colorado law;

C.  An award to Mr. Rubalcava of liquidated damages pursuant to 29 U.S.C. § 626(b);

D.  An award to Mr. Rubalcava of attorneys' fees, including litigation expenses, and costs;

E.  An award to Mr. Rubalcava of pre- and post- judgment interest; and

F.  An award to Mr. Rubalcava of all such other and further relief and equitable relief as the Court deems just and proper.

## JURY DEMAND

Mr. Rubalcava further demands a trial by jury on all issues in this matter.

Respectfully submitted this 29th day of July, 2021.

/s/ Lilly G. Lentz
Lilly G. Lentz, Esq.

**RUBALCAVA V. MYEYEDR.**                    9
**COMPLAINT AND JURY DEMAND**

Michael J. Lazar III, Esq.
Feldmann Nagel Cantafio & Song PLLC
1875 Lawrence St., Suite 730
Denver, Colorado 80202
Telephone: (303) 813-1200
Facsimile: (303) 813-1201
E-mail: llentz@fncslaw.com
        mlazar@fncslaw.com
*Attorneys for Plaintiff*